UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

<table>
<tr><td>FRANCISCO VALDEZ, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>CITY OF SAN JOSE, et al.,<br><br>        Defendants.</td><td>Case No.: 4:09-cv-0176 KAW<br><br>AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT</td></tr>
</table>

Francisco Valdez, Ricardo Vasquez, Daniel Martinez, and Jamil Stubbs ("Plaintiffs")[1] commenced this putative class action against the City of San Jose ("City"), San Jose Police Chief Robert Davis ("Chief Davis"), and San Jose Police Department ("SJPD") Officers Agamau,[2] Martin, Rickert, Wallace, and Orlando.  Plaintiffs assert various federal constitutional claims and related state law causes of action.  Defendants now move for summary judgment on the related state law claims.  Plaintiffs oppose the motion.  Having considered the papers filed by the parties and the arguments of counsel, the court grants the motion in part and denies the motion in part.

## I.    BACKGROUND

### A.    Factual background

In their motion, Defendants insist that the record is clear as to what facts are in dispute and refer to the documentation previously filed with their first summary judgment motion for factual

---

*This order amends page 10 to the court's prior order, Dkt. No. 226, disposing of Defendants' second motion for summary judgment.

[1] All Plaintiffs identify as Latino, except Stubbs, who identifies as African-American.

[2] Agamau is named in the operative complaint as "Agaman" but indicated during his deposition that his true name is Agamau.  Kallis Decl., Ex. F1, Agamau Depo. 4:7-10.

United States District Court
Northern District of California

background.  (Defs.' 2d Mot. Summ. J. at 2 n.1, Dkt. No 199.)  Plaintiffs similarly "only provide

for the court those matters that are relevant to plaintiffs' claims and which are actually in dispute."

(Pls.' Opp'n at 3, Dkt. No. 209.)  The court will therefore take judicial notice of, and refer to,

Chief Judge Wilken's order, which disposed of Defendants' first motion for summary judgment

based on the documentation the parties have declined to provide in connection with the instant

motion, for factual background. [3]  *See* FED. R. CIV. P. 201.  To the extent that the parties rely on

documents not filed with the instant motion, or those not specifically cited in their papers, to

support their factual assertions or their legal arguments, the court declines to search through the

voluminous record for those relevant materials.  *See* FED. R. CIV. P. 56(c); *see also Keenan v.*

*Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (It is not the court's task "to scour the record in search

of a genuine issue of triable fact. ") (internal quotations and citations omitted).

    1.    <u>The Martinez arrest</u>

    On the evening of February 1, 2007, Daniel Martinez went to a nightclub in downtown

San Jose with his cousin, and a friend, Shana Stewart.  (Kallis Decl., Ex. B., Martinez Depo.

19:21-20:2; Kallis Decl., Ex. K, Stewart Decl. ¶ 2.)  While at the club, a group of women

assaulted Stewart and stole her purse while she was waiting in line for the bathroom.  (Stewart

Decl. ¶ 3; Martinez Depo. 44:21-23.)  Martinez and his cousin did not witness the incident.

(Stewart Decl. ¶¶ 3-4, 7; Kallis Decl. Ex. K, Martinez Decl. ¶ 4.)  Stewart informed them about it

immediately afterward and described her assailants to them.  (Stewart Decl. ¶¶ 3-4, 7; Martinez

Decl. ¶ 4.)

    Martinez then approached a woman, resembling one of Stewart's attackers, who was

speaking to one of the club's security guards.  (Martinez Depo. 45:3-6; Stewart Decl. ¶ 7.)

Martinez asked the woman to go speak with the police, who had arrived at the club a few minutes

earlier.  (Martinez Depo. 43:23-44:4.)  The woman refused and began to flee.  (*Id.* at 62:6-15.)

Martinez then tried to tell one of the SJPD Officers that the woman was getting away but the

---

[3] Following the ruling on the first summary judgment motion, the case was reassigned to this
court.  April 29, 2013 Order Reassigning Case, Dkt. No. 180.

United States District Court
Northern District of California

1  officer ignored him.  (*Id.* at 61:23-62:17.)  The officer, who was speaking to Stewart at the time,

2  told Martinez to leave them alone.  (*Id.* at 62:12-17.)

3      Martinez then approached another officer to report that one of Stewart's attackers was

4  fleeing.  (*Id.* at 63:5-14.)  According to Martinez, the officer responded by asking Martinez to step

5  toward the curb.  (*Id.* at 65:19-24.)  Disappointed by the officer's response, Martinez called the

6  officer an "asshole," but despite his frustration, Martinez still complied with the officer's

7  instructions to walk toward the curb.  (Martinez Depo. 61:18-22, 73:3-5.)  As he moved toward

8  the curb, Martinez claims that the officer "grabbed [his] right hand and twisted it behind [his]

9  back."  (*Id.* at 73:1-15.)  When Martinez asked why he was being arrested, the officer told him

10  that it was because he was drunk.  *(Id.)*  As he asked the question, the officer reached for his

11  service belt.  *(Id.)*  Martinez feared that the officer was going to deploy one of his weapons.  (*Id.*

12  at 75:19-76:6.)  Another officer threatened that he would punch Martinez if he said anything.  (*Id.*

13  at 73:11-15.)  Officer Wallace then "cuffed [Martinez], frisked [him], and placed [him] under

14  arrest."  (*Id.* at 73:11-12.)  Martinez admits that he had a rum-and-coke and part of a beer earlier

15  that night but denies that he was drunk when he was arrested.  (*Id.* at 29:18-20; 55:4-8.)

16      Officer Wallace recounts the arrest differently.  (Wallace Decl. ¶ 8, Dkt. No. 128.)  He

17  states that Martinez appeared "very drunk," had bloodshot eyes, an unsteady gait, and emitted "a

18  strong odor of alcohol."  *(Id.)*  Officer Wallace also asserts that Martinez had been wandering

19  around in the street prior to his arrest and had been harassing various officers.  (*Id.* ¶ 7.)  Based on

20  these observations, Officer Wallace believed that "Martinez was unable to care for his safety" and

21  arrested him under California Penal Code section 647(f).[4]  *(Id.)*  Officer Wallace asserts that he

22

23  [4] Under that provision, a person is guilty of disorderly conduct, a misdemeanor, if he or she:

24      is found in any public place under the influence of intoxicating liquor, any drug,
       controlled substance, toluene, or any combination of any intoxicating liquor, drug,

25      controlled substance, or toluene, in a condition that he or she is unable to exercise
       care for his or her own safety or the safety of others, or by reason of his or her

26      being under the influence of intoxicating liquor, any drug, controlled substance,
       toluene, or any combination of any intoxicating liquor, drug, or toluene, interferes

27      with or obstructs or prevents the free use of any street, sidewalk, or other public
       way.

28

United States District Court
Northern District of California

"gave no consideration to the fact that Mr. Martinez is Hispanic in making the decision to arrest him." (*Id.* ¶ 10.)  Stewart, who is white, was also arrested.  (Stewart Decl. ¶¶ 12-13.)  She also asserts that she was sober at the time of her arrest.  (*Id.* ¶ 10.)  She is not a plaintiff in this action.

       2.     <u>The Valdez and Vasquez arrests</u>

On June 27, 2008, Francisco Valdez and Ricardo Vasquez drove from Freedom, California to San Jose.  (Kallis Decl., Ex. D, Vasquez Depo. 9:2-14.)  They arrived in the early evening and parked at a downtown 7-Eleven on Santa Clara Street.  (*Id.*; Kaliss Decl., Ex. C, Valdez Depo. 14:1-8.)  After spending a "few hours" in the downtown area, the two returned to the 7-Eleven to drive back to Freedom.  (*Id.* at 15:25-16:4; Vasquez Depo. 8:17-20.)  Neither recalls exactly where they went or how long they spent in the downtown area.  (Valdez Depo. 16:5-9; Vasquez Depo. 11:7-12, 12:3-5, 23:4-10.)  Both assert that they did not purchase any alcohol while they were there.  (Valdez Depo. 16:5-9; Vasquez Depo. 11:7-12, 12:3-5, 23:4-10.)

When they returned to their car, Vasquez entered the 7-Eleven to buy some snacks and non-alcoholic beverages for the drive home.  (Vasquez Depo. 16:18-22.)  Valdez waited for him in the parking lot near the truck.  (*Id.* at 16:6-17; Valdez Depo. 20:2-13.)  According to Valdez, several SJPD officers approached him while he was standing in the parking lot and began questioning him about why he was there.  (Valdez Depo. 20:11-20, 23:2-4, 23:15-19.)  When he replied that he was waiting for a friend, one of the officers went inside the store to find Vasquez.  (*Id.*)  Valdez asserts that while he has speaking to the officers in the parking lot, one of them told him, "We don't want your kind here."  (*Id.* at 24:6-8.)

The officer who went into the 7-Eleven found Vasquez and escorted him towards the parking lot.  (Vasquez Depo. 16:17-25.)  Vasquez testified at his deposition that the officer grabbed his hand and twisted it as they left the store.  (*Id.* at 17:1-7.)  He also testified that the officers refused to respond when he and Valdez asked why they were being questioned.  (*Id.* at 17:16-20, 18:19-19:8.)

---

CAL. PENAL CODE § 647(f).

1    Once Valdez and Vasquez were both in the parking lot, the police zip-tied their hands,

2  placed them under arrest, and put them in a police van.  (Vasquez Depo. 18:10-19:5; Valdez

3  Depo. 24:2-14.)  The two were taken into custody and detained until early the next morning.

4  (Valdez Depo. 24:24-25; Vasquez Depo. 29:5-6.)  Although Valdez admits to having consumed

5  some whiskey that he brought from Freedom earlier in the evening, both he and Vasquez assert

6  that they were not intoxicated when they were arrested.  (Valdez Depo. 17:11-20, 36:11-37.1;

7  Vasquez Depo. 26:13-18, 35:22-23.)

8    The officers who arrested Valdez and Vasquez dispute their claims of sobriety.  Officer

9  Panighetti states that Vasquez had "red, bloodshot, watery eyes, . . . gave off a strong order of

10 alcoholic beverage . . . exhibited a staggered gait."  (Panighetti Decl. ¶ 5, Dkt. No. 133.)  Officer

11 Amagau similarly states that Valdez "staggered as he walked toward [him and] . . . his breath

12 blasted out a strong odor of alcohol."  (Agamau Decl. ¶ , Dkt. No. 130.)  Officer Amagau also

13 state that Valdez was "in the middle of 10th [Street] . . . walking in circles" when Amagau first

14 encountered him.  *(Id.)*  Both officers assert that they arrested Vasquez and Valdez for public

15 intoxication based on their observations of the pair's behavior at the 7-Eleven that night.

16 (Panighetti Decl. ¶ 6; Amagau Decl. ¶¶ 7-8.)  The officers also assert that the arrests were based

17 solely on these observations and not Valdez's or Vasquez's race or ethnicity.  (Panighetti Decl. ¶

18 6; Amagau Decl. ¶ 8.)

19    3.    The Stubbs arrest

20    On September 6, 2008, Jamil Stubbs and his friend, Leon Shirley, drove from Newark,

21 California, to San Jose to attend some live music performances.  (Kallis Decl., Ex. A, Stubbs

22 Depo. 16:1-9.)  They parked in a public garage on Third Street at about 9:00 p.m.  *(Id.* at 19:2-

23 10.)  At approximately 1:00 a.m., Stubbs and Shirley walked back to the garage to drive back to

24 Newark.  *(Id.* at 27:20-28:3.)

25    When they returned to the garage, they encountered two officers near Shirley's car.  *(Id.*

26 Stubbs Depo. 32:6-8.)  According to Stubbs, one of the officers approached him as he was putting

27 out a cigarette beside the car while the other officer approached Shirley.  (Stubbs Depo. 28:11-14,

28 29:15-19, 32:6-21.)  Stubbs testified at his deposition that, although he could not hear exactly

United States District Court
Northern District of California

United States District Court
Northern District of California

what Shirley was saying to the officer, it sound like Shirley "was getting smart" with him.  (*Id.* at 32:18-21.)  While Shirley was speaking to that officer, the other officer "pulled [Stubbs] to the side" and accused him of urinating on the wall of the parking garage, a charge that Stubbs immediately denied.  (*Id.* at 36:5-17.)  The officers placed both Shirley, who is white, and Stubbs, who is African-American, under arrest.  (*Id.* at 32:11-12; Shirley Decl. ¶¶ 9-10.)  Although Stubbs admits that he had a few drinks at the club earlier in the evening, both he and Shirley maintain that he exhibited no signs of intoxication or defiance when they were arrested.  (Stubbs Depo. 57:16-58:9; Shirley Decl. ¶ 11.)  Shirley, who is not a plaintiff in this action, asserts that he was also sober at the time of the arrest.  (Shirley Decl. ¶ 5.)

According to Officer Orlando, who arrested Stubbs, Stubbs first caught his attention "because he was urinating on the wall in the garage."  (Orlando Decl. ¶ 5, Dkt. No. 132.)  Officer Orlando states that Stubbs' "eyes were bloodshot," his breath smelled of alcohol, and "he was verbally combative and would not listen to commands."  (*Id.* ¶ 6.)  Officer Orlando asserts that he decided to arrest Stubbs for public intoxication based on these observations.  (*Id.* ¶ 8.)  Officer Orlando also states that neither he nor Officer Perez, who arrested Shirley, based their decisions on Stubbs' or Shirley's race.  (Orlando Decl. ¶ 9.)

**B.     Procedural background**

   1.   The complaints

On January 14, 2009, Plaintiffs filed this putative class action against the City, Chief Davis, and multiple SJPD officers.[5]  (Compl., Dkt. No. 1.)  Plaintiffs filed their first amended complaint on February 2, 2009 and their second amended complaint on July 14, 2009.  (1st Amended Compl., Dkt. No. 10.; 2d Amended Compl., Dkt. No. 25-1.)

In their second amended complaint, Plaintiffs assert sixteen causes of action.  (2d Amended Compl. at 21, 22, 23, 24, 25.)  The causes of action based on federal law include: (1) a

---

[5] Officers Panighetti and Perez are not named defendants.  As of the date of this order, Plaintiffs have failed to heed the court's previous instructions that "[i]f they wish to substitute [Panighetti and Perez] for Doe Defendants, they must file and notice a motion for leave to amend their complaint."  *See* Feb. 27, 2013 Order Denying Mot. Class Cert. and Granting in Part and Denying in Part Defs.' Mot. Summ. J. at 19-20.

claim under 42 U.S.C. § 1983 ("Section 1983") and *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978) against the City based on an alleged policy, custom, and long-standing practice of wrongfully arresting individuals under Penal Code section 647(f), in violation of Plaintiffs' First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; (2) a *Monell* claim against Chief Davis based on his actions as a final policy maker; (3) a *Monell* claim against Chief Davis based on his ratification of police misconduct; (4) a *Monell* claim against the City for failure to train police officers as to the rights secured by the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments; (5) a claim under Section 1983 against Chief Davis for "supervisory liability based on the misconduct of subordinates[;]" (6) a claim under Section 1983 against SJPD Officers Agamau, Martin, Rickert, Wallace, and Orlando for falsely detaining, arresting, and incarcerating Plaintiffs in violation of their First and Fourth Amendment rights, as well as depriving them of their Fifth, Sixth, and Eighth Amendment rights, and enforcing Section 647(f) in a discriminatory manner in violation of the Fourteenth Amendment; and (7) a claim against all Defendants for conspiracy under 42 U.S.C. § 1985.   (2d Amended Compl. at 21, 22, 23, 24, 25.)

Among Plaintiffs' state law causes of action are:  (8) a claim for false arrest against SJPD Officers Agamau, Martin, Rickert, Wallace, and Orlando; (9) a claim for false imprisonment against SJPD Officers Agamau, Martin, Rickert, Wallace, and Orlando; (10) a claim for battery against SJPD Officers Agamau, Martin, Rickert, Wallace, and Orlando; (11) a claim against all Defendants for violations of the Ralph Act, California Civil Code section 51.7 ("Section 51.7"); (12) a claim against all Defendants for violations of the Bane Act, California Civil Code section 52.1 ("Section 52.1"); (13) a claim against all Defendants for civil conspiracy to violate civil rights and commit torts; (14) a claim against all Defendants for aiding and abetting civil rights violations and the commission of torts; (15) and a claim for negligence against all Defendants. (2d Amended Compl. at 21, 22, 23, 24, 25.)  Plaintiffs' sixteenth cause of action is a claim for injunctive relief against all Defendants.   (*Id.* at 25.)

//

//

//

### 2.    The class certification motion

On May 29, 2013, Plaintiffs moved to certify a class consisting of:

> [a]ll individuals who between January 14, 2006 and the present were arrested for [a] violation of Penal Code [section] 647(f) where the Affidavit of Probable cause fails to present objective facts sufficient to demonstrate a violation of Penal Code [section] 647(f).

(Pls.' Mot. Class Cert. at 2, Dkt. No. 118) (capitalizations in original).  Plaintiffs also moved to certify a subclass consisting of:

> [a]ll racial minorities who between January 14, 2006 and the present were subjected to unequal and discriminatory enforcement of Penal Code [section] 647(f) based upon their race as demonstrated in Penal Code [section] 647(f) police paperwork and the statistical analysis.

*(Id.)*  On June 8, 2012, Defendants opposed the motion for class certification and simultaneously moved for summary judgment and/or partial summary judgment.  (Defs.' Mot. Summ J. and Opp'n to Pls.' Mot. Class. Cert., Dkt. No. 127.)  The court denied the class certification motion. (Feb. 27, 2013 Order Denying Mot. Class Cert. and Granting in Part and Denying in Part Defs.' Mot. Summ. J. at 36, Dkt. No. 162.)

### 3.    Defendants' first summary judgment motion

Plaintiffs opposed Defendants' first motion for summary judgment.  (Pls.' Opp'n, Dkt. No. 143.)  After a hearing on the motion, the court granted the motion in part and denied the motion in part.  (Feb. 27, 2013 Order Denying Mot. Class Cert. and Granting in Part and Denying in Part Defs.' Mot. Summ. J. at 13, 14, 15, 16, 17, 31.)  The court determined that disputed issues of material fact remained with respect to each plaintiff's arrest and denied summary judgment as to the following claims:  Plaintiffs' Fourth Amendment claims, stated in their sixth cause of action, against SJPD Officers Wallace, Agamau, Orlando; Plaintiffs' First, Fifth, Sixth, and Eighth Amendment claims, also included in their sixth cause of action;[6] Plaintiffs' Fourteenth Amendment claims, also stated in their sixth cause of action, against Agamau; and Plaintiffs'

---

[6] The court noted that while these claims survived Defendants' summary judgment motion, the Plaintiffs had not provided an evidentiary basis to support most of them.  Feb. 27, 2013 Order Denying Mot. Class Cert. and Granting in Part and Denying in Part Defs.' Mot. Summ. J. at 17.

United States District Court
Northern District of California

seventh cause of action for conspiracy under 42 U.S.C. § 1985.  (*Id.* at 36.)  The court also denied summary judgment on the state law causes of action, having determined that Defendants' failure to present arguments or evidence in support of their motion precluded summary judgment as to those claims.  (*Id.* at 31.)

The court granted summary judgment as to the following federal claims:  Plaintiffs' first cause of action against the City for *Monell* liability based on an alleged policy, custom, and long-standing practice of wrongfully arresting individuals for violations of Penal Code section 647(f) in violation of Plaintiffs' First, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; Plaintiffs' second cause of action against the City for *Monell* liability based on Chief Davis' actions as a final policy maker; Plaintiffs' third cause of action against the City for *Monell* liability based on Chief Davis' ratification of police misconduct; Plaintiffs' fourth cause of action against the City for *Monell* liability based on failure to train police officers; Plaintiffs' fifth cause of action against Chief Davis "for supervisory liability based on misconduct of subordinates[;]" and Stubbs' and Martinez's Fourteenth Amendment claim, as stated in the sixth cause of action.  (*Id.* at 19, 23, 28, 30, 36.)

4.     The motion to sever claims for trial

On June 13, 2013, Defendants filed a Motion to Sever Claims for Trial pursuant to Federal Rule of Civil Procedure 21.[7]  (Mot. Sever, Dkt. No. 185.)  In the motion, Defendants argued that "the arrests of Martinez and Stubbs were independent from, distant in time, and unrelated in any way to each other or to the Valdez and Vasquez arrests."  (*Id.* at 6.)  On that basis, Defendants requested that the court try the Martinez and Stubbs claims separately and the Valdez and Vasquez claims together.  (*Id.* at 8.)  Plaintiffs filed their opposition to the motion on June 27, 2013.  (Pls.' Opp'n Mot. Sever, Dkt. No. 187.)  Defendants filed their reply on July 5, 2013. (Defs.' Reply Mot. Sever, Dkt. No 192.)

The court held a hearing on the motion on July 25, 2013.  (Dkt. No. 197.)  During the hearing, the parties agreed that the language in the order denying the first summary judgment

---

[7] Federal Rule of Civil Procedure 21 provides:  "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

motion made it clear that some of the state law claims against Defendants remained to be tried and that some of those claims survived because Defendants failed to fully brief their arguments in support of the motion due to the court's page limit.  (July 29, 2013 Order Granting Defs.' Leave and Denying Def.'s Mot. Sever at 1, 2, Dkt. No. 198.)  Accordingly, the court granted Defendants' leave to file a second motion for summary judgment as to the remaining state law claims, but denied the motion to sever without prejudice to re-filing after the court ruled on the second summary judgment motion.  (*Id.* at 2.)

     5.     <u>Stipulated dismissal of claims</u>

On July 10, 2013, the court ordered the parties to meet and confer regarding their remaining causes of action.  (July 10, 2013 Order, Dkt. No. 193.)  On July 15, 2013, the parties stipulated to a dismissal of the following claims:  Plaintiffs' claims for violations of the Fifth, Sixth, and Eighth Amendments, as stated in their sixth cause of action; Vasquez's claim against Officer Agamau for battery; and Valdez's causes of action in total.  (Stipulation of Dismissal at 2, Dkt. No 194.)  The parties have since stipulated to dismissal of additional claims, including the thirteenth cause of action for conspiracy to violate civil rights and torts; the fourteenth cause of action for aiding and abetting violations of civil rights; and the sixteenth cause of action for injunctive relief.  (Stipulation re Trial Date and Dismissing Causes of Action, Dkt. No. 224.)

Following the stipulations, the following claims remain:  the sixth cause of action, to the extent that it contains Plaintiffs Vasquez's, Stubbs', and Martinez's First and Fourth Amendment claims against SJPD Officers Wallace, Orlando, and Agamau and Plaintiff Vasquez's claim for Fourteenth Amendment violations against Officer Agamau; the seventh cause of action for federal conspiracy under 42 U.S.C. § 1985; the eighth cause of action for false arrest; the ninth cause of action for false imprisonment; the tenth cause of action for battery; the eleventh cause of action for violations of California Civil Code section 51.7; the twelfth cause of action for violations of California Civil Code section 52.1; and the fifteenth cause of action for negligence.  (*Id.* at 5, 6.)

     6.     <u>The second summary judgment motion</u>

On August 28, 2013, Defendants filed their second motion for summary judgment and/or partial summary judgment as to Plaintiffs' remaining state law claims.  (Defs.' 2d Mot. Summ J.,

Dkt. No. 199.)  Plaintiffs oppose the motion.  (Pls.' Opp'n, Dkt. No. 209.)  Defendants filed their

reply on October 2, 2013.  (Defs.' Reply, Dkt. No. 211.)

On October 3, 2013, the court ordered Plaintiffs to show cause why portions of their

opposition should not be stricken.  (Oct. 13, 2013 Show Cause Order, Dkt. No. 13.)  Specifically,

the court required Plaintiffs to address why the court should consider any of the 3,000 pages

incorporated in Plaintiffs' opposition by reference.  (*Id.* at 1.)  The court also required Plaintiffs to

address why their arguments on the issue of severance should not be stricken.  *(Id.)*  Plaintiffs

responded to the court's order to show cause on October 8, 2013.  (Dkt. No. 213.)  Plaintiffs

included over 1,000 pages of additional documentation with their response.  (Dkt. Nos. 213, 214,

215, 216, 217.)  In disposing of this second motion for summary judgment, however, the court

notes that Plaintiffs do not cite to all 3,000 pages incorporated by reference, or to any of the 1,000

pages included with their response to the order to show cause, in their opposition.  Accordingly,

in disposing of the instant motion, the court considers only those materials Plaintiffs specifically

cite in their opposition.  *See* FED. R. CIV. P. 56(c); *Carmen v. San Francisco United Sch. Dist.*,

237 F.3d 1026, 1031 (9th Cir. 2002) ("The district court need not examine the entire file for

evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing

papers with adequate references so that it could conveniently be found".); *Keenan*, 91 F.3d at

1279.

## II.       LEGAL STANDARD

"A court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In deciding a motion for

summary judgment, the court views the evidence in the light most favorable to the nonmoving

party.  *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir. 1987).  The court must draw

all reasonable inferences in favor of the party against whom summary judgment is sought.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of showing that there are no genuine disputes as

to any material fact.  *Id.* at 586.  A dispute is genuine if there is sufficient evidence for a

United States District Court
Northern District of California

reasonable fact finder to hold in favor of the nonmoving party, and a fact is material if, under applicable substantive law, it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)*; Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment.  Instead, the moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods.*, 247 F.3d at 997 (citations and quotations omitted).

If the moving party does not bear the burden of proof on an issue at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

If the moving party discharges its burden by negating an essential element of the nonmoving party's claim or defense, it must produce affirmative evidence to defeat that element. *Id.* at 1105.  If the moving party produces such evidence, the burden then shifts to the nonmoving party to produce specific evidence to show that a dispute of material fact exists.  *Id.*

If the moving party discharges its burden by showing the absence of evidence to support an essential element of a claim or defense, the party need not produce evidence showing the absence of a material fact on such issues or support its motion with evidence negating the nonmoving party's claim.  *Id.*  In that instance, the burden then shifts to the nonmoving party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

If the moving party does not discharge its burden of production by either method, the nonmoving party need not offer any evidence in support of its opposition. *Nissan*, 210 F.3d at 1105.  This is true even though the nonmoving party bears the ultimate burden of persuasion at trial. *Id.* at 1107.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    DISCUSSION

A.   Plaintiffs' eighth and ninth causes of action for false arrest and false imprisonment survive summary judgment.

Plaintiffs Martinez, Vasquez, and Stubbs assert claims for false arrest and false imprisonment against the individual officers.  (2d Amended Compl. at 23, 24.)  Defendants concede that these claims are essentially identical to the Fourth Amendment claim for arrest without probable cause.  (Defs.' 2d Mot. Summ J. at 6.)  Defendants also concede that because of the material factual disputes on the issue of probable cause, these claims are not "amenable to a motion for summary judgment."  *(Id.)*

Accordingly, Plaintiffs' false arrest and false imprisonment claims survive summary judgment.

B.   Plaintiffs' tenth cause of action for battery does not survive summary judgment.

"The elements of civil battery are:  (1) [the d]efendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) [the p]laintiff did not consent to the contact; and (3) [t]he harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff."  *Piedra v. Dugan*, 123 Cal. App. 4th 1483, 1494 (2004) (internal citations, quotations, and modifications omitted).  A state law battery claim is the equivalent of a federal claim of excessive force.  *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009).  "In both, a plaintiff must prove that the peace officer's use of force was unreasonable."  *Id.* (citation omitted); *see also Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1993) (a plaintiff must establish unreasonable force as part of its prima facie case for battery).

California Penal Code section 835(a) authorizes a police officer to "use reasonable force to make an arrest, prevent escape or overcome resistance and need not desist in the face of resistance."  *See Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1102 (2004), *overruled on other grounds as stated in Hayes v. County of San Diego*, 57 Cal. 4th 622, 636 (2013).  A claim that an officer used excessive force in conducting an arrest or investigatory stop is "analyzed under the reasonableness standard of the Fourth Amendment to the United States Constitution."  *Brown*, 171 Cal. 4th at 527 (internal quotations and citation omitted).  This "requires a

United States District Court
Northern District of California

careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Arpin v. Santa Clara Valley Transp. Agent*, 261 F.3d 912, 921 (9th Cir. 2001). The court must examine "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Id.* (citations and quotations omitted). "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (citation omitted).

Defendants contend that "the arrests involved the standard use of handcuffing and/or force associated with . . . handcuffing" and that such use of force "cannot be considered unreasonable, since officers may use reasonable force to make an arrest." (Defs.' 2d Mot. Summ J. at 6.) As Defendants explained during the hearing, their position is that an arrest typically occurs when an arrestee is handcuffed. The act of handcuffing, in turn, requires that an officer grab a suspect's arm and place it behind his or her back. This amount of force is therefore reasonable, as it is necessary to effect any arrest. Plaintiffs, on the other hand, assert, without citation to the record, that "[b]ased on the undisputed material facts the elements for battery are present. . . . By forcibly handcuffing and searching plaintiffs' persons without reasonable suspicion or probable cause, a battery occurred." (Pls.' Opp'n at 16.)

Plaintiffs' position is unavailing. Even assuming that Plaintiffs' arrests were in fact not supported by probable cause, that alone does not give rise to a battery claim. As this court explained during the hearing, a state law battery claim is the equivalent of a federal claim of excessive force and is analyzed under a reasonableness standard. *See Brown*, 171 Cal. App. 4th at 527. The relevant inquiry is not, as Plaintiffs suggest, whether Stubbs' and Martinez's arrests were not supported by probable cause, thereby rendering the use of any force unreasonable. Instead, the question is whether the force the Officers Orlando and Wallace employed in effecting those arrests, irrespective of the probable cause issue, was reasonable. *See id.*

To that end, Defendants cite to specific portions of Stubbs' and Martinez's deposition testimony which show the following: Stubbs' arresting officer "place[d] him in handcuffs" and

"ask[ed him] to place [his] hands on a vehicle."  (Defs.' 2d Mot. Summ. J. at 8 (citing Stubbs Depo. 38:24-41:2, 41:6-20).)  "Officer Wallace grabbed [Martinez's] right arm and twisted it behind [his] back . . . .  From there he took –walked [Martinez] over to a car and cuffed [him], frisked [him], [and] place[d him] under arrest."  (Defs.' 2d Mot. Summ J. at 7 (citing Martinez Depo. 72:20-73:12).)  Even when viewing the facts in the light most favorable to Plaintiffs, Defendants have shown that there is no genuine dispute as to any material fact concerning the use of force involved in the arrests of Plaintiffs Stubbs and Martinez.  While Plaintiffs are correct that reasonableness is ordinarily a question reserved for the jury, on this record, no reasonable fact finder could find that the force the officers used to arrest these Plaintiffs was unreasonable.  *Cf. Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (district court improperly granted summary judgment for defendant officers where the facts, including a witness's affidavit, showed officers used excess force by unreasonably injuring plaintiff's wrist and arm as they handcuffed her).

Plaintiffs do not cite portions of the record or otherwise offer evidence to rebut Defendants' showing.  Plaintiffs have thus failed to show that there is a factual dispute for trial. *See Keenan*, 91 F.3d at 1279 ("The courts rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (internal quotations and citations omitted).  Plaintiffs reference the same portions of Martinez's deposition discussed above.  During the hearing on the motion, Plaintiffs asserted that Stubbs was handcuffed and "forced over the hood of a vehicle."  They also stated that the Plaintiffs' depositions and declarations "say more than they arrested me."  The materials Plaintiffs cite to in their opposition, however, show only that an "officer asked [Stubbs] to place [his] hands on a vehicle . . . ." and that Stubbs was "[one] hundred percent compliant" with the officer's commands.[8]

---

[8] During the hearing on the motion, Plaintiffs indicated that Stubbs' declaration gave a fuller account of the circumstances surrounding his arrest.  Plaintiffs cite to that declaration in footnote 6. Pls.' Opp'n at 3.  That footnote reads:  "Kallis Decl., Ex. A, Stubbs Dec. ¶ 4."  However, the declaration is not included in that exhibit.

United States District Court
Northern District of California

Accordingly, the court grants summary judgment on Stubbs' and Martinez's battery claims.[9]  As the remaining Plaintiffs, Vasquez and Valdez, have dismissed their battery claims, summary judgment on Stubbs' and Martinez's battery claims dispose of the tenth cause of action in its entirety.[10]

C.  Vasquez's eleventh cause of action for a violation of California Civil Code section 51.7 does not survive summary judgment.

California Civil Code section 51.7 provides:

All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive.

The elements of a claim brought under this section are: "(1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was motivated by his perception of plaintiff's race; (3) the plaintiff was harmed; and (4) the defendant's conduct was a substantial

---

[9] Plaintiffs argue that Defendants have not met their burden as to Vasquez's battery claim. *Id.* at 17. However, it appears the that parties stipulated to the dismissal of this claim, at least as to Vasquez's battery claim against SJPD Officer Agamau. *See* Dkt. No. 194 at 2. The only other SJPD officer Plaintiffs name as having been involved is Vasquez's arrest is SJPD Officer Panighetti. However, he is not a proper defendant here. *See supra* note 5. Therefore, the court is unable to discern why Plaintiffs argue that Defendants have not met their burden with respect to Vasquez's battery claim since it appears that the claim has already been disposed of.

[10] While Plaintiffs' federal excessive force claim survived the first motion for summary judgment, the court notes that it is susceptible to the same reasonableness analysis, which here, requires that the court dispose of the battery claim on summary judgment. *See Brown*, 171 Cal. App. 4th at 527 (battery claim is the state law equivalent of a federal excessive force claim and is analyzed under the same reasonableness standard).  As discussed *supra* Part III.B., no reasonable jury could find that the force the defendant officers employed in arresting Plaintiffs Martinez and Stubbs was unreasonable.  For the same reason, Plaintiffs' excessive force claim cannot provide the basis for the cause of action Plaintiffs bring under Section 52.1, which requires a showing of threats, intimidation, or coercion.  *See* discussion *infra* Part III.D.  The court again encourages the parties to meet and confer regarding the claims that should proceed to trial to avoid unnecessary motion practice.

1    factor in causing the plaintiff's harm."  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1165

2    (N.D. Cal. 2009) (citation omitted).

3            During the hearing, Plaintiffs clarified that the sole basis for the claim brought under

4    Section 51.7 is Officer Panighetti's purported racial comment towards Plaintiff Vasquez.  They

5    also asserted that there were two officers, Agamau and Panighetti, who made comments.

6    Plaintiffs indicated during the hearing that one of the comments was to the effect of "we don't

7    like your kind here" while the other, the substance of which Plaintiffs did not specify, was

8    "similar in its racial description."  Defendants correctly point out that in their statement of facts,

9    Plaintiffs attribute a single racially-motivated statement to Panighetti, who is not a proper

10   defendant.  (Defs.' Reply at 5; Pls.s' Opp'n at 8.)  The only reference to Agamau is that he

11   "instructed another officer to detain and arrest Vasquez."  *(Id.)*  Plaintiffs offer no citation to the

12   record reflecting that Agamau gave such instructions or that he made any racially-motivated

13   comment.  The portions of the record to which Plaintiff cite show only that an officer told

14   Vasquez "We don't like you people."  (Pls. Opp'n at 15 (citing Vasquez Depo. 16:6-10, 17:1-

15   18:6, 9:16-20:2).)

16           Plaintiffs argue that their Section 51.7 claim is viable despite their failure to name Officer

17   Panighetti as a defendant.  They assert that Officer Panighetti's use of "we" in his purported

18   racial comment makes the comment attributable to, and therefore actionable against, the other

19   officers involved in Vasquez's arrest as well as the City.  Plaintiffs offer no legal authority to

20   support attributing the statement of one officer to another officer for the purposes of determining

21   liability under Section 51.7.  Even if Plaintiffs' theory were viable, this claim still fails for

22   another reason.

23           A claim under Section 51.7 also requires a showing of "violence, or intimidation by

24   threat of violence."  *See* Cal. Civ. Code § 51.7.  With respect to intimidation by threat of

25   violence, the test is whether "a reasonable person, standing in the shoes of the plaintiff, [would]

26   have been intimidated by the actions of the defendant and have perceived a threat of violence."

27   *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001) (internal

28   quotations and citations omitted).  Defendants have shown that Plaintiffs cannot establish that

United States District Court
Northern District of California

17

United States District Court
Northern District of California

1  element here.  (Defs.' 2d Mot. Summ. J. at 9, 10.)  Defendants assert that Plaintiff Vasquez did

2  not allege any use of force beyond that incident to his actual arrest.  (*Id.* at 10.)  During his

3  deposition, Vasquez testified that an officer grabbed his hand, "twisted it like [the officer] was

4  going to arrest [him]," zip-tied him, and loaded him onto a vehicle.  (*Id.* (citing Johnson Decl.,

5  Ex. C, Vasquez Dep. at 16:18-19:8).)  Plaintiffs rely on these same portions of Vasquez's

6  deposition, arguing that "[u]nreasonable force resulting in excess force or a battery can certainly

7  be termed violence."  (Pls.' Opp'n at 15.)

8       Viewing the facts in the light most favorable to Plaintiffs, Plaintiff Vasquez was indeed

9  arrested, and one of the officers involved that arrest made a racially-motivated comment.  Even if

10  that comment could be attributed to any of the named defendants in this action, however, the

11  circumstances surrounding Vasquez's arrest do not show violence or intimidation by threat of

12  violence, nor do they support a reasonable inference of such conduct.  *Cf. Winarto*, 274 F.3d at

13  1289, 1290 (plaintiff established violence where defendant kicked him at least once and showed

14  threats of violence where defendant threatened to hurt her again).  Accordingly, the court grants

15  summary judgment on this claim.  As Vasquez is the only Plaintiff alleging a violation of Section

16  51.7, summary judgment on this claim disposes of the eleventh cause of action in its entirety.

17       D.   Plaintiffs' twelfth cause of action for violations of California Civil Code
18            section 52.1 does not survive summary judgment.

19       "Civil Code section 52.1 authorizes an action at law, a suit in equity, or both against

20  anyone who interferes, or tries to do so, by threats, intimidation or coercion, with an individual's

21  exercise or enjoyment of rights secured by federal or state law.  *Jones v. Kmart Corp.*, 17 Cal. 4th

22  329, 331 (1998); *see* CAL. CIV. CODE § 52.1.  "The essence of a [Section 52.1] claim is that the

23  defendant, by the specified improper means (i.e., threats, intimidation[,] or coercion) tried to or

24  did prevent the plaintiff from doing something he or she had the right to do under the law or to

25  force the plaintiff to do something that he or she was not required to do under the law."  *Shoyoye*

26  *v. County of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012) (internal quotations and citations

27  omitted).  This section "does not extend to all ordinary tort actions because its provisions are

28  limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right."

1   *Venegas v. County of Los Angeles*, 32 Cal. 4th 820, 843 (2004).  Put another way, "[a] cause of

2   action under the [statute] requires a predicate—the application of threat, intimidation[,] or

3   coercion and an object—interference with a constitutional or statutory right."  *Rodriguez v. City of*

4   *Fresno*, 819 F. Supp. 2d 937, 953 (E.D. Cal. 2011).

5        Plaintiffs rely on *Cole v. Doe 1 thru 2 Officers of the City of Emeryville Police Dept.*, 387

6   F. Supp. 2d 1084 (N.D. Cal. 2005) for the proposition that an arrest, not supported by probable

7   cause, can serve as the basis for a claim under Section 52.1.  In that case, two police officers

8   stopped and detained the plaintiff and searched his vehicle.  *Id.* at 1087.  The plaintiff argued that

9   the officers violated Section 52.1 when they used their authority to stop the plaintiff even though

10  he had not committed a traffic violation and when they coerced him into consenting to the search

11  of the trunk of his car by suggesting they would take off the handcuffs if he allowed the search.

12  *Id.* at 1098, 1103.  The court determined that the "[u]se of law enforcement authority to effectuate

13  a stop, detention (including use of handcuffs), and search can constitute interference by 'threat[],

14  intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the

15  detention, and continue a search." *Id.* at 1103 (citations omitted, modifications in original).   The

16  plaintiff's Section 52.1 claim thus survived summary judgment.  *Id.*

17        In two more recent opinions, the California Court of Appeal has clarified the standard that

18  applies to claims brought under Section 52.1.  In *Shoyoye*, the plaintiff's arrest and initial

19  detention were lawful.  203 Cal. App. 4th at 950.  At some point during his detention, a

20  department of corrections hold was incorrectly placed on the plaintiff's file.  *Id.*  He was further

21  detained due to that error.  *Id.* at 951-52.  The court concluded that "where coercion is inherent in

22  the constitutional violation alleged, i.e., an overdetention in [c]ounty jail, the statutory

23  requirement of 'threats, intimidation, or coercion' is not met.  The statute requires a showing of

24  coercion independent from the coercion inherent in the wrongful detention itself."  *Id.* at 959.

25  (reading *Cole* as a case focusing on whether the use or attempted use of excessive physical force

26  or violence must be alleged and noting that its reasoning was not persuasive).  As the plaintiff had

27  failed to offer evidence of any coercion independent of that inherent in the wrongful detention

28  itself, the court reversed the judgment against the county on that claim.  *Id.* at 962.

In *Bender v. County of Los Angeles*, 217 Cal. App. 4th 968 (2013), sheriff's deputies unlawfully arrested the plaintiff. The deputies pepper sprayed him, slammed him to the ground, kicked him, and struck him in the head with a flashlight while he was in handcuffs and not resisting arrest. *Id.* at 973. The court rejected the defendants' argument that Section 52.1 did not apply because coercion was inherent to the unlawful arrest. *Id.* at 978. The court determined that the statute applied "because there was a Fourth Amendment violation—an arrest without probable cause—accompanied by the beating and pepper spraying of an unresisting plaintiff, i.e., coercion that is in no way inherent to an arrest, either lawful or unlawful." *Id.* The judgment in favor of plaintiff was affirmed. *Id.* at 991.

*Shoyoye* and *Bender* are instructive here. They defeat Plaintiffs' argument that an unlawful arrest alone can serve as the basis for a claim under Section 52.1. *See Shoyoye*, 203 Cal. App. 4th at 965 (Section 52.1 did not apply where the plaintiff had been detained for an extended period of time due to human error and had failed to offer evidence of any coercion independent of that inherent to the wrongful detention itself); *Bender*, 217 Cal. App. 4th at 981 (Section 52.1 applied where the plaintiff was wrongfully arrested, beaten, and pepper sprayed). Plaintiffs' reliance on their surviving First and Fourth Amendment[11] claims do nothing to salvage their cause of action under Section 52.1. Even if Plaintiffs' prevailed on those claims, they would only establish the object of the Section 52.1 claim, that is, interference with a constitutional or statutory right. *See Rodriguez*, 819 F. Supp. 2d at 953 (a claim under Section 52.1 requires a predicate—threat, intimidation or coercion, and an object—interference with a constitutional or statutory right). They would not establish the necessary predicate of threats, intimidation, or coercion. *See id.*

For these reasons, the court grants summary judgment as to Plaintiffs' twelfth cause of action for violations of Section 52.1.

//

---

[11] Plaintiffs' federal excessive force claim does not support a cause of action under Section 52.1 for the same reasons Plaintiffs' state law battery claim does not survive summary judgment. *See* discussion *supra* Part III.B & note 10.

E.  <u>Plaintiffs' fifteenth cause of action for negligence survives summary judgment only as against the individual officers.</u>

"In order to prove facts sufficient to support a finding of negligence, a plaintiff must show that the defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate cause or legal cause of the resulting injury."  *Hayes*, 57 Cal. 4th at 629 (internal quotations, modifications, and citations omitted).  Direct liability of a public entity "must be founded on a specific statute either declaring the entity to be liable or creating a specific duty of care *apart from* the general tort principles embodied in Civil Code section 1714 and the various liability of a public entity for torts committed by its employees within the course and scope of their employment . . . ."  *De Villers v. County of San Diego*, 156 Cal. App. 4th 238, 251 (2007) (emphasis in original).

Plaintiffs rely on California Government Code section 815.6 ("Section 815.6") to establish liability against the City and Chief Davis for the individual officers' alleged constitutional violations and torts.  (Pls.' Opp'n at 19.)  That section provides:

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

According to Plaintiffs, their "claim for negligence involves the City's overall duty to supervise their personnel so that they do not violate the constitutional rights of others."  (Pls.' Opp'n at 19.)  Plaintiffs assert that this duty is found when looking at California Civil Code sections 52.1, 52.3 and Government Code section 815.6 collectively.  (*Id.*)  On this basis, Plaintiffs contend that "a [c]ity may be held responsible for the actions of their employees and may be subjected to injunctive relief directly under 52.1 and respondeat superior under [section] 815.2."[12]  (*Id.* at 19, 20.)  Specifically, Plaintiffs argue that the City has a mandatory duty to comply with 52.1.  While that provision contemplates conduct by a "person" or "persons,"

---

[12] Although Plaintiffs mention respondeat superior in their papers, they made it clear during the hearing that they are not asserting that theory here and instead relying solely on California Government Code section 815.6 to establish the City's and Chief Davis' liability.

United States District Court
Northern District of California

1    Plaintiffs, relying on *Aguilar v. City of South* Gate, 2013 U.S Dist. LEXIS 10611, at *18 (C.D.

2    Cal. Jan. 25, 2013), an unpublished, out-of-district case, maintain that the City is a "person" for

3    the purposes of Section 52.1 and is therefore under a mandatory duty.[13]  Defendants correctly

4    argue that Plaintiffs negligence claim fails "for lack of statutory authorization."  (Defs. 2d. Mot.

5    Summ. J. at 15.)  More specifically, Defendants maintain that "Plaintiffs are completely wrong in

6    their theory that . . . Section[s] 52.1 or 52.3, or any other provision provides a mandatory duty

7    under Section 815.6."  (*Id.* at 7.)

8           Section 815.6 is specific in that it provides for direct liability against a public entity only

9    when the public entity is "under a mandatory duty *imposed by an enactment*."  *See* CAL. GOV'T

10   CODE § 815.6 (emphasis supplied).  "The enactment at issue must be *obligatory*, rather than

11   merely discretionary or permissive, in its directions to the public entity; it must *require*, rather

12   than merely authorize or permit, that a particular action be taken or not taken."  *De Villers*, 156

13   Cal. App. 4th at 256 (citations and quotations omitted; emphasis in original).

14          Here, Plaintiffs offer Sections 52.1 and 52.3 as the basis for the City's mandatory "duty to

15   supervise their personnel so that they do not violate the constitutional rights of rights."  (Pls.'

16   Opp'n at 19.)  However, Section 52.1 merely authorizes actions for equitable and declaratory

17   relief for interference or attempted interference by "a person or persons" with an individual's

18   constitutional rights.  *See* CAL. GOV'T CODE § 52.1.  Moreover, Section 52.3 states that:  "[n]o

19   governmental authority . . .  shall engage in a pattern or practice[14] of conduct by law

20   enforcement officers that deprives any person of rights, privileges, or immunities secured or

21   protected by the Constitution or laws of the United States or by the Constitution or laws of

22   California."  In this case, these provisions do not give rise to the mandatory duty necessary to

---

[13] During the hearing, Plaintiffs asserted that the Section 52.1 expressly defines a "person" to include a governmental entity.  The provision, however, contains no such definition.  *See* CAL. GOV'T CODE § 52.1.

[14] In an attempt to establish "a pattern or practice," Plaintiffs filed over 900 pages of supplemental materials.  Dkt. No. 222.  Plaintiffs do not specifically cite to any of those materials in their opposition.  Accordingly, the court does not consider those papers in disposing of the instant motion.

United States District Court
Northern District of California

1    sustain Plaintiffs' negligence claim.  *See De Villers*, 156 Cal. App. 4th at 251 (rejecting the

2    argument that federal regulations imposed a mandatory duty for which governmental entity could

3    be held directly liable for negligently hiring and supervising its employees).  For this reason,

4    Plaintiffs' negligence claim fails as against the City and Chief Davis.

5              To the extent that Plaintiffs assert a negligence claim against any remaining officers for

6    failing to use reasonable force, Defendants are entitled to summary judgment on the claim for the

7    reasons discussed *supra* Part III.B.  Defendants, however, have failed to meet their initial burden

8    of showing that there is no genuine dispute as to any material fact concerning the individual

9    officers' alleged failure to exercise ordinary care and prudence in detaining, arresting, and

10   searching Plaintiffs.

11             Accordingly, the court grants summary judgment as to Plaintiffs' fifteenth cause of action

12   for negligence against the City and Chief Davis and denies summary judgment on this claim as to

13   the individual officers as set forth above.

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

United States District Court
Northern District of California

## IV.   CONCLUSION

For the reasons set forth above, the court grants Defendants' second motion for summary judgment in part and denies the motion in part.  Summary judgment is granted as to the following claims:

(1) The tenth cause of action for battery in its entirety.

(2) The eleventh cause of action for a violation of Section 51.7 in its entirety.

(3) The twelfth cause of action for violations of Section 52.1 in its entirety.

(4) The fifteenth cause of action for negligence against the City and Chief Davis.

Summary judgment is denied as to the following claims:

(1) The eighth cause of action for false arrest, asserted by Plaintiffs Vasquez, Martinez, and Stubbs, against the individual officers.

(2) The ninth cause of action for false imprisonment, asserted by Plaintiffs Vasquez, Martinez, and Stubbs, against the individual officers.

(3) The fifteenth cause of action for negligence, asserted by Plaintiffs Vasquez, Martinez, and Stubbs, against the individual officers.

IT IS SO ORDERED.

Dated: November 18, 2013

KANDIS A. WESTMORE
United States Magistrate Judge